S01A1186. PECINA v. THE STATE.

(554 SE2d 167)

HINES, Justice.

Everardo Martinez Pecina was convicted of driving under the influence of alcohol to the extent that it was less safe for him to drive than if he was not so influenced ("DUI"), OCGA § 40-6-391 (a) (1), and serious injury by vehicle, OCGA § 40-6-394. He challenges the constitutionality of OCGA § 40-6-394 as applied in his case and of Rule 31.3 of the Uniform Superior Court Rules ("USCR"), the sufficiency of the evidence, the admission of evidence of similar transactions, and the trial court's instructions to the jury. For the reasons

which follow, we affirm.

Pecina was driving a pickup truck that struck, virtually head on, an automobile driven by Mike Phillips. Just before the collision, Pecina's vehicle traveled the wrong way down one side of the road. Phillips's vehicle was stopped in a turning lane as he prepared to turn left into the parking lot of the hospital where his mother worked. His mother, Gemina Phillips, age 67, was seated in the front passenger seat. Injuries to Ms. Phillips were the basis of the charge of serious injury by vehicle.

When Corporal Sylvia Smith arrived on the scene, she found Phillips's automobile sitting in the road and Pecina's truck off the road. Phillips, with blood coming from his mouth, exited his vehicle; Ms. Phillips was unconscious and bleeding. Pecina was still in his truck, lying back as if he was unconscious. He had a cut approximately one inch long on his scalp. Inside his truck was an open beer can, and the floorboard was wet, as if the beer had recently spilled. There were empty beer cans behind the seat and in the truck bed.

1. Pecina contends that the "serious injury by vehicle" statute, OCGA § 40-6-394,[1] is unconstitutional as applied to him. Specifically, he maintains that the language "by seriously disfiguring his body or a member thereof" is so vague and ambiguous as to fail to place him on notice as to what type of injuries will constitute a violation of this statute, thus depriving him of due process and equal protection under the law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. I, Par. II of the 1983 Georgia Constitution.

"A statute is not unconstitutionally vague if its language provides persons of ordinary intelligence with notice as to what it prohibits so they may conduct themselves accordingly." *State v. Boyer*, 270 Ga. 701 (1) (512 SE2d 605) (1999). "[A] constitutional attack to a statute on a vagueness ground that does not involve a First Amendment challenge must be decided on the particular facts of each case." Id. at 702. Thus, the issue is whether OCGA § 40-6-394's prohibition against causing bodily harm to another "by seriously disfiguring his body or a member thereof" through the violation of OCGA § 40-6-391 gave Pecina due notice that it prohibited the conduct for which he

---

[1] Former OCGA § 40-6-394 read:
Whoever, without malice, shall cause bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof, or by causing organic brain damage which renders the body or any member thereof useless through the violation of Code Section 40-6-390 [reckless driving] or 40-6-391 [driving under the influence] shall be guilty of the crime of serious injury by vehicle. A person convicted under this Code section shall be guilty of a felony and shall be punished by imprisonment for not less than one year nor more than five years.

has been convicted. This Court has not previously addressed this question. But in *Baker v. State*, 246 Ga. 317, 318 (2) (271 SE2d 360) (1980), this Court found virtually identical language to be constitutional. *Baker* decided a challenge to the aggravated battery statute, now found at OCGA § 16-5-24 (a), specifically the language prohibiting maliciously causing bodily harm to another "by seriously disfiguring his or her body." We see no distinction between the language used in the aggravated battery statute and that used in the serious injury by vehicle statute, and thus no reason to consider the serious injury by vehicle statute unconstitutionally vague in every instance.

Under the facts of this case, the proscription against "seriously disfiguring" a bodily member is not applied in an unconstitutional manner. Ms. Phillips suffered two broken legs just above the knees; both were shattered into dozens of pieces and one witness, an experienced orthopedic surgeon, stated that they were the worst femur fractures he had seen. Bone protruded through the skin of one leg. She also suffered a broken kneecap and a broken shoulder. She had serious injuries to her forehead, including an area in which the skin was separated from the skull and "kind of peeled back."

Ms. Phillips required surgery to her legs. Incisions were made from her knees to her thighs on both legs and the bones were pieced together with metal plates and screws. She underwent a second operation about a week later involving bone grafts from her pelvis, as well as from the bone bank, to repair her legs. In a third surgery, pins and wires were inserted in her shoulder. That was followed by a final operation on her knees in an attempt to relieve stiffness. Nine months after the injuries, her improvement stopped; her knees remain stiff. Her treating physician testified that she suffered permanent impairment from her injuries, and can walk only a short distance without a cane.

Due to the effects of these injuries, Ms. Phillips moved to a different home because she could no longer climb steps; she had often walked to work before the collision. She cannot "step up real high" and leans to one side when she walks. She has two scars on her head, scars and a deformed appearance to her legs, and an area on the left knee where "bone sticks out." Given the nature of Ms. Phillips's injuries, the prohibition against causing bodily harm to another "by seriously disfiguring his body" gave Pecina due notice that it prohibited the acts for which he has been convicted. *Baker*, supra at 318.

2. Pecina next urges that the evidence is insufficient as a matter of law to convict him of DUI. OCGA § 40-6-391 (a) (1). Although he contends that all the State proved was that the odor of alcohol was present, there was considerably more evidence of his guilt than that. The odor of alcohol may be considered by the jury, along with other factors, in determining if the defendant was driving under the influ-

ence of alcohol to the extent that it was less safe for him to drive. See *Hollis v. State*, 234 Ga. App. 269, 271 (2) (505 SE2d 837) (1998). But not only did a strong odor of alcohol come from Pecina's breath and person, there was an open beer can in the truck; the carpet on the floor of the truck cab was wet; the inside of the truck smelled of alcohol; additional beer cans were behind the seat and in the bed of the truck; and his pants were wet and smelled of urine. Furthermore, Pecina was lying back in the seat, as if unconscious, when Corporal Smith, the first officer on the scene, approached his truck. She had to speak to Pecina several times before he responded. When he got out of the truck, Pecina staggered and almost fell down. Upon Corporal Smith's request for his driver's license and insurance information, Pecina merely handed her his unfolded wallet to search. Pecina's pants were so wet that his wallet was soaked, and the items inside were damp.

When there is evidence that the defendant has been drinking, the manner of his driving may be considered on the question of whether he has been affected by alcohol to the extent that he is less safe to drive. *Duggan v. State*, 225 Ga. App. 291, 293 (1) (483 SE2d 373) (1997). Phillips saw Pecina's truck going "this way and that way. . . . His truck goes clear over to this lane, and then tries to come back this way," and testified that Pecina was "either going to hit me or he was going to hit somebody else."

Pecina testified that: he drank beer the night before the 6:30 a.m. collision; slept in his truck; knocked over a beer that he placed on the steering wheel the night before, wetting himself and the inside of the truck cab; co-workers put empty beer cans in his truck cab; he was driving to his brother's home to change clothes before work when his accelerator stuck and his brakes failed, forcing him to swerve to avoid vehicles in his own lane of travel; he had a dental condition that made his breath smell of alcohol for a considerable period after he drank; and he staggered getting out of the truck because he had hit his head in the collision. However, the jury was entitled to reject this testimony. See *Clark v. State*, 271 Ga. 27, 28-29 (1) (518 SE2d 117) (1999).

Although Pecina urges that the only evidence of his guilt of the DUI charge is circumstantial, DUI may be shown by circumstantial evidence only. *Wooten v. State*, 234 Ga. App. 451, 452 (1) (507 SE2d 202) (1998). And "[i]t is not necessary that the circumstantial evidence exclude every other hypothesis except that of guilt, but only reasonable inferences and hypotheses. It was for the jury to decide whether all reasonable hypotheses have been excluded." Id. There was sufficient evidence for the jury to find beyond a reasonable doubt that Pecina was guilty of driving under the influence of alcohol to the extent that it was less safe for him to drive. *Jackson v. Virginia*, 443

U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Stone v. State*, 248 Ga. App. 190, 192-193 (1) (546 SE2d 787) (2000); *In the Interest of C. P. M.*, 213 Ga. App. 761, 763 (446 SE2d 242) (1994).

Pecina further contends that the evidence was insufficient to convict him of serious injury by vehicle because the injuries Ms. Phillips sustained do not rise to the level of severity necessary to constitute a violation of OCGA § 40-6-394. As established in Division 1, there was ample evidence for a jury to find that Ms. Phillips's injuries were sufficient to be "seriously disfiguring." *Jackson*, supra. See *Moss v. State*, 209 Ga. App. 59, 60 (1) (432 SE2d 825) (1993).[2]

3. Pecina contends that USCR 31.3, the "similar transaction" exception, is unconstitutional as violative of the Separation of Powers Doctrine, and is a judicial encroachment on the General Assembly's power to legislate the rules of evidence. See Const. of Ga. of 1983, Art. I, Sec. II, Par. III and Art. VI, Sec. I, Par. IX. However, this argument has previously been addressed and rejected by this Court. See *Harmon v. State*, 259 Ga. 444-445 (2) (383 SE2d 874) (1989); *Preston v. State*, 257 Ga. 42, 45 (6) (354 SE2d 135) (1987).

4. The trial court admitted evidence of two prior similar transactions. See *McGee v. State*, 267 Ga. 560, 562-564 (2) (480 SE2d 577) (1997); *Williams v. State*, 261 Ga. 640, 641-643 (2) (409 SE2d 649) (1991). Pecina argues that this was error because the prior incidents were dissimilar to the one for which he was being tried in that they involved his driving while intoxicated by alcohol, and that there was no evidence of intoxication in this case. But this is clearly not so. See Division 2, supra.

5. Pecina claims that the trial court erred when it failed to give his requests to charge numbers 9 and 10, which referred to the sufficiency of the evidence against him.[3] The requested instructions were properly rejected as not adjusted to the evidence. See *McDade v. State*, 270 Ga. 654, 656-657 (4) (513 SE2d 733) (1999). Contrary to the language of requested charge 9, Corporal Smith testified that

---

[2] Pecina notes that one physician testified that he did not believe Ms. Phillips's surgical scars were disfiguring. However, the question under OCGA § 40-6-394 is whether the violation of OCGA § 40-6-391 (a) (1) caused serious disfigurement to her body, not whether the surgical scars alone were disfiguring.

[3] Pecina requested as his charge 9:

An arresting officer's testimony that a defendant's "eyes were red and glassy, and he had an odor of alcoholic beverages about his breath" is insufficient to sustain a conviction for driving under the influence in violation of O.C.G.A. Section 40-6-391, where the officer testified that the defendant's speech was not slurred, that he was not staggering, and there was nothing unusual about his driving.

He requested as charge 10:

I charge you that nothing more than blood shot, red and glassy eyes, and an odor of alcohol about a person's body alone does not authorize a conviction of driving under the influence in violation of O.C.G.A. Section 40-6-391.

Pecina was staggering. This evidence also rendered inapt the reference in requested charge 10 to "nothing more than blood shot, red and glassy eyes, and an odor of alcohol . . . alone."

Further, although the language in these requests is found in *Clay v. State*, 193 Ga. App. 377, 379 (387 SE2d 644) (1989), "[e]ven though language used by the appellate courts in a decision may embody sound law, it is not always appropriate to employ such language in instructing the jury." *Stull v. State*, 230 Ga. 99, 104 (4) (196 SE2d 7) (1973). Here the requested charges come from an appellate opinion reversing a conviction on insufficiency of the evidence. As such, they were comments on the specific evidence in *Clay*, and inappropriate in this case.

6. Finally, Pecina contends that the trial court gave an erroneous jury instruction on driving under the influence of alcohol.[4] The challenged jury instruction is adjusted from the pattern charge found in Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2d ed., rev. 1996, pp. 138-138a (T) (2) (a) (1). Contrary to Pecina's claim, the challenged instruction does not inform the jury that it may convict him of DUI based on the odor of alcohol alone, or unduly emphasize evidence of such an odor. In fact, the instruction specifically informs the jury that such an odor alone is insufficient evidence upon which to base a conviction.

*Judgments affirmed. All the Justices concur, except Fletcher, C. J., who concurs in the judgment and in all Divisions except Division 4.*

DECIDED OCTOBER 22, 2001.

*Teddy R. Price*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, George W. K. Snyder, Jr., John K. Franks, Assistant District Attorneys*, for appellee.

---

[4] The trial court charged the jury that:
Specifically as to the consumption of alcohol, you may consider among other factors the smell or lack of smell of alcoholic beverages on the defendant's breath and/or on his person. As to whether the defendant was less safe to drive, you may consider the factors you deem relevant, including but not limited to the actual manner of driving the motor vehicle, the defendant's control of his mental/physical ability, the physical condition of the defendant. Merely showing that a defendant had been drinking or that there was a smell of alcohol on the defendant's breath or person without proof of the manner of driving or the ability to drive is insufficient to prove the defendant was guilty of driving under the influence of alcohol.