A04A1129. WILLIAMS v. THE STATE.
(601 SE2d 833)

RUFFIN, Presiding Judge.

A jury found Richard Williams guilty of aggravated assault, burglary, and obstructing an emergency telephone call. Williams appeals, challenging the sufficiency of the evidence and asserting that the trial court committed a charging error. Although we find the evidence sufficient as to each count, we agree with Williams that the trial court erred in charging the jury as to burglary. Accordingly, we affirm in part, reverse in part, and remand for a new trial.

1. On appeal from a criminal conviction, we view the evidence in a light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence.[1] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt of the crimes charged.[2]

Viewed in this manner, the evidence shows that Williams' girlfriend, Shirley Allen, purchased a house and agreed to allow Williams

---

[1] See *Eady v. State,* 256 Ga. App. 696 (569 SE2d 603) (2002).
[2] See id.

to live with her and her 18-year-old son on the condition that Williams did not "drink a lot." Williams paid one-half of the $800 down payment for the home, but both the house title and the mortgage were in Allen's name.

Allen testified that Williams did not keep "his end of the bargain." He drank, used drugs, and picked fights with her. Williams gave her money for the house and monthly bills, but often took it back. At one point, Williams accused her of going out with another man and pushed her. Allen called the police, but decided not to press charges against Williams. On another occasion, Williams turned the gas on in the house, threatened to blow up the house, and stated that he planned to have Allen killed. Allen again called the police, but did not press charges. Williams also threatened her with a knife and scratched her face with a barbecue fork.

Following each of these incidents, Allen agreed to let Williams back into her home after he apologized and promised to "try to do better." In February 2003, however, Williams moved out of the house, taking most of his belongings with him and leaving only a few tools. Allen told Williams that she did not want him to return to the house and, according to Allen, the couple separated.

On February 25, 2003, Williams called Allen around 4:00 or 5:00 a.m. and tried to convince her to let him back in the house. When Allen replied that she did not want to be with him, he stated that "he was going to come and kill [her]," and he also threatened to kill himself. Allen, who had been asleep when Williams called, thought Williams was "kidding" and went back to sleep. Sometime later, Allen heard Williams by the side of the house, near the basement. She looked out the window, and Williams asked to be let into the house. After Allen refused, Williams pulled what Allen believed to be a weapon out of his pocket and ran to the back door. Williams then kicked in the back door.

Allen's son, Markell, awoke to the sound of the door being kicked in and found his mother in the kitchen fighting with Williams. Fearing for his mother's safety, Markell hit Williams with a bat. Williams then charged at Markell, pushed him down, and stabbed him with a knife. Allen pulled Williams off of Markell, convinced Williams to leave, and also stated that she planned to call the 911 emergency services. At that point, Williams told Allen that she could not call 911 because he had cut the telephone line.

Allen used a neighbor's telephone to call an ambulance for her son. Following the incident, Allen discovered that her telephone line, which was located outside the house above the basement door, had been cut. The telephone company employee who repaired the line testified that it had a "clean cut" that appeared intentional.

Based on this and other evidence, a jury found Williams guilty of aggravated assault on Markell, burglary, and obstructing an emergency telephone call. On appeal, Williams argues that the evidence was insufficient to support his convictions. We disagree.

(a) *Aggravated Assault.* "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[3] The State presented evidence that Williams stabbed Markell several times with a butcher knife. Williams argues on appeal that he was merely defending himself against Markell's attack with a bat. But given the evidence presented, including that Markell hit Williams with a bat to protect his mother from Williams, who forced his way into their house, that Williams then charged Markell, pushed him down, and stabbed him, and that Markell suffered several stab wounds, including a defensive wound, the jury was authorized to reject Williams' justification claim and find him guilty of aggravated assault.[4]

(b) *Burglary.* Under OCGA § 16-7-1 (a), a person is guilty of burglary "when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another." Williams challenges his burglary conviction on two grounds.

First, he argues that he was authorized to enter the house. Allen testified, however, that she and Williams were separated on February 25, 2003, and that she had told him he could not return to the house, which was titled in her name. Prior to that date, Williams had removed most of his belongings from the home and, on the day of the incident, no longer had a house key. Allen further testified that Williams often took back from her money he had contributed toward the house payments and utility bills. Finally, Williams entered the residence on February 25, 2003, by kicking down the back door.

Based on this evidence, the jury was entitled to conclude that Williams was not authorized to enter the house during the early morning hours of February 25, 2003. As we have noted, "[o]nce the victim . . . withdraw[s] the defendant's authority to enter her house, the fact that the defendant may have once lived at the victim's house and had left personal property within the house does not, in itself,

---

[3] OCGA § 16-5-21 (a) (2).

[4] See *Eady,* supra at 697 (1); *Stewart v. State,* 201 Ga. App. 190 (1) (410 SE2d 380) (1991); see also OCGA § 16-3-21 (b) (2) ("A person is not justified in using force . . . if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony.").

give the defendant subsequent authority to enter."[5] Furthermore, in light of Williams' forcible entry, "the jury could infer that [Williams] knew that he was without authority to be in [Allen's] house."[6] Although Williams presented several witnesses who testified that he lived there, the jury was authorized to conclude otherwise.

Williams further argues that the State failed to prove he intended to commit a felony "prior to entering the residence." The intent necessary for commission of burglary, however, "need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises."[7] Because the evidence supported the jury's conclusion that Williams assaulted Markell with a knife in Allen's house, it "was authorized to determine that at some point before he entered the house or while he remained in it, he intended to commit the aggravated assault."[8] The fact that Williams threatened Allen, cut the telephone line, and kicked in her back door further supported the jury's conclusion that he intended to commit a felony in the house.[9]

(c) *Obstructing an emergency call.* Williams also argues that the evidence was insufficient to support his conviction under OCGA § 16-10-24.3, which provides that

> [a]ny person who verbally or physically obstructs, prevents, or hinders another person with intent to cause or allow physical harm or injury to another person from making or completing a 911 telephone call or a call to any law enforcement agency to request police protection or to report the commission of a crime is guilty of a misdemeanor.

Construed favorably to the verdict, the evidence shows that Allen's outside telephone line was intentionally cut, and Williams told Allen that, because he had cut the line, she could not call 911 on

---

[5] *Pittman v. State*, 230 Ga. App. 799, 802 (498 SE2d 309) (1998). See also *Armour v. State*, 247 Ga. App. 592-593 (1) (544 SE2d 516) (2001) (jury entitled to conclude that defendant was not authorized to enter girlfriend's home on day he assaulted her; although defendant had previously lived with girlfriend and had paid the gas bill at the home, girlfriend had asked defendant to leave the home several days before the assault, and he did not have permission to be in the home on the day of the assault).

[6] *Pittman,* supra. See also *Aufderheide v. State*, 144 Ga. App. 877-878 (1) (242 SE2d 758) (1978) (in finding that evidence supported conclusion that defendant was not authorized to enter his estranged wife's home, court noted that defendant broke door to enter).

[7] *Hewatt v. State*, 216 Ga. App. 550, 551 (2) (455 SE2d 104) (1995).

[8] *Littleton v. State*, 225 Ga. App. 900, 902 (3) (485 SE2d 230) (1997). See also *Stephens v. State*, 232 Ga. App. 738, 739 (1) (503 SE2d 643) (1998).

[9] See *Hewatt,* supra at 551-552.

February 25, 2003. Moreover, when Allen first heard Williams outside her house in the early morning hours of February 25, he was in the area where the telephone line was located.

Cutting or otherwise disabling a telephone line is a "physical" act under OCGA § 16-10-24.3.[10] Furthermore, given the circumstances, including that Allen had called the police on several prior occasions to report difficulties with Williams, the jury was authorized to conclude that Williams cut Allen's telephone line to prevent her from calling 911 and "with intent to cause or allow physical harm or injury to another person."[11]

We recognize that Williams likely disabled the telephone before Allen even considered calling for help. Williams' actions, however, prevented Allen from making the call once she decided to do so. And a physical act that obstructs, prevents, or hinders another person from making a 911 call falls within the charged offense.[12] Despite Williams' suggestion to the contrary, nothing in OCGA § 16-10-24.3 restricts its application to acts that obstruct, prevent, or hinder emergency calls that are actually *in progress*. The legislature could have placed such a limitation on the offense, but it did not do so, and we cannot view this omission as meaningless.[13] Accordingly, we find no merit in Williams' challenge to his conviction under OCGA § 16-10-24.3.

2. We agree with Williams, however, that the trial court's jury instruction as to burglary requires reversal of that conviction. The trial court charged the jury that "[u]nder our law, once the victim had withdrawn the defendant's authority to enter her house, the fact that the defendant may have once lived at the victim's house and had left personal property within the house does not by itself give the defendant subsequent authority to enter." This language was taken directly from our opinion in *Pittman v. State*.[14] The court then instructed the jury that "you are going to have to decide whether or not the defendant had the authority to enter the house. You've heard the

---

[10] See *Weaver v. State*, 256 Ga. App. 573-574 (1) (568 SE2d 836) (2002) (evidence that defendant pulled telephone wires from the wall while victim tried to call 911 supported conviction under OCGA § 16-10-24.3).

[11] OCGA § 16-10-24.3. See also *Izzo v. State*, 265 Ga. App. 143, 145-146 (3) (592 SE2d 915) (2004).

[12] See OCGA § 16-10-24.3; see also *Gillison v. State*, 254 Ga. App. 232 (1) (561 SE2d 879) (2002) (in context of obstruction of a police officer, "any act that directly tends 'to interfere with, interpose obstacles or impediments, hinder, impede, interrupt in any manner, or prevent or pervert the . . . administration of justice constitutes [such] obstruction' ").

[13] See *Strickland v. State*, 265 Ga. App. 533, 539, n. 16 (594 SE2d 711) (2004) (for the offense of simple battery against a police officer, legislature could have required proof that officer was in lawful discharge of official duties, but did not do so; "[u]nder the rules of statutory construction, the omitted language cannot be deemed meaningless").

[14] See *Pittman*, supra at 802.

arguments; you've heard the testimony. You'll have to make that decision."

Through its *Pittman* charge, the trial court instructed the jury that Allen "*had* withdrawn [Williams'] authority to enter her house."[15] The court also told the jurors that the issue of authority was a question of fact for them to resolve. But, given the language of the instruction, the jury was only asked to decide whether Williams *subsequently* obtained authority after Allen's withdrawal. In other words, the court instructed the jurors that Allen had withdrawn Williams' authority to enter the house, then asked them to determine whether Williams obtained new authority after the withdrawal.

As noted by our Supreme Court, "it is not always appropriate to incorporate into a jury instruction language used in an appellate decision."[16] The principle announced in *Pittman* related to the sufficiency of the evidence in that case. Although it is helpful in resolving Williams' similar challenge to the evidence, it is not a proper jury instruction, which must be adjusted to the evidence adduced at trial.[17]

In our view, whether Allen initially withdrew Williams' authority was a question of fact for the jury. Allen testified that she told Williams he could not return. But Williams presented evidence that he resided in the house on February 25, 2003, had paid one-half of the house down payment, and contributed to the monthly bills. And Allen admitted that Williams gave her money for the house less than two weeks before February 25, 2003. She further testified that Williams left the house in February 2003 because he was trying to avoid the police in an unrelated matter, not because she asked him to move. Given this conflicting evidence, the jury *might* have concluded that Allen had not, in fact, withdrawn Williams' authority to enter the house.

The trial court's *Pittman* charge improperly removed a question of fact from the jury's consideration.[18] Accordingly, we must reverse Williams' burglary conviction and remand for a new trial as to that charge.

*Judgment affirmed in part and reversed in part. Case remanded for a new trial as to burglary. Eldridge and Adams, JJ., concur.*

DECIDED JULY 7, 2004.

---

[15] (Emphasis supplied.)

[16] *Chase v. State*, 277 Ga. 636, 640 (2) (592 SE2d 656) (2004).

[17] See *Pecina v. State*, 274 Ga. 416, 420 (5) (554 SE2d 167) (2001).

[18] See *Chase*, supra; *Pecina*, supra at 420-421.

*September Guy*, for appellant.

*Jeffrey H. Brickman, District Attorney, Elisabeth G. Mac-Namara, Assistant District Attorney*, for appellee.