## A05A0390. PATTERSON v. THE STATE.
### (618 SE2d 81)

PHIPPS, Judge.

Floyd Patterson appeals from his convictions of burglary, aggravated assault, battery, and possession of tools for the commission of a crime. Patterson contends: (1) the trial court erred by denying his motion to suppress evidence of a show-up identification; (2) insufficient evidence supported his burglary conviction; (3) the prosecutor engaged in misconduct by introducing a separate offense; and (4) the trial court erred by rejecting his claim of ineffective assistance of counsel. Because Patterson has demonstrated no reversible error, we affirm.

"On appeal, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[1] Viewed in this light, the record shows that sometime after 1:30 a.m. on a January night in 2002, the female victim encountered an unknown man in the hallway of her home. When she screamed, the man hit her, cutting her lip and causing her nose to bleed. Her husband woke up and chased the intruder out of the house. Thinking that her husband had successfully closed the door after chasing the man away, the wife went into their home office just off the hallway to call 911.

The husband testified that he chased the intruder down the front sidewalk and then returned to close the front door. As he was closing

---

[1] *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995) (citation and punctuation omitted).

the front door, the man returned "as fast as he left" and tried to reenter the house. The man punched through a Plexiglas window on the door and hit the husband in the head with a screwdriver a couple of times. He also kicked the door in, but left after he apparently heard the wife calling 911.

The husband testified that he was able to clearly see the man who attacked him because the lights were on in the office, living room, and front porch and he was 25 inches away from him when they struggled at the door. The husband described the intruder as a black male about 5'8" tall with a short beard and hair so short he looked almost bald. He said the intruder had been wearing a jacket.

Officer Kenneth Fisher arrived three to six minutes after being dispatched in response to the 911 call. He obtained a description of the intruder and broadcast it over police radio as a BOLO ("be on the lookout"). Approximately ten minutes after his arrival, Fisher heard on the police radio an alarm call for an address a few blocks away. Officer Richard Lewis was dispatched to that location.

Lewis learned that the alarm system showed the basement door alarm had been triggered. At the back of the house, he found Patterson lying underneath the deck beside the basement door, pretending to be asleep. He was not wearing a jacket. Because Patterson otherwise fit the BOLO description issued ten or fifteen minutes earlier, however, Lewis handcuffed him and notified Fisher. Patterson was then placed into the custody of Fisher, who had traveled to that location.

Fisher brought Patterson to the first home and the husband and wife identified him as the intruder while he was in the back seat of a patrol car with his hands handcuffed behind his back. Fisher testified that the wife stated that the apprehended person "look[ed] a lot like" the intruder and that she thought it was the intruder, but she was not 100 percent certain. The husband "recognized his face easily," but also asked Fisher if he could look at the suspect's hands because the burglar had punched a hole in the Plexiglas. When he saw fresh blood on Patterson's hand, it "was the clincher for the identification." Fisher testified that the husband was much more certain in his identification than the wife. At trial, the husband identified Patterson as the intruder and the wife stated that she was not sure if Patterson was the intruder because she did not see his face during the incident.

The owner of the home where Patterson was found testified that he found a screwdriver and a jacket under his deck near the basement door a few days after Patterson was arrested and that neither item had been there before the day of Patterson's arrest. A booking picture taken of Patterson after he was arrested shows that he had very short hair and a short beard.

1. Patterson contends that the trial court should have granted his motion to suppress the show-up identification made by the husband. "An identification by showup is admissible so long as under the 'totality of the circumstances' the identification is reliable, even though the confrontation procedure may have been suggestive."[2] "In making this determination, we consider the witness' opportunity to view the suspect at the time of the offense, the witness' degree of attention, the accuracy of the witness' prior description, the witness' level of certainty, and the length of time between the crime and the identification."[3]

In this case, the show-up occurred shortly after the incident, the husband had a good opportunity to view the intruder's face because they were in close proximity and lights were on both inside and outside the home, the husband was certain of his identification both in and out of court, and the husband's description of a short beard and short hair was corroborated by the booking photo of Patterson. As a result, the trial court properly denied Patterson's motion to suppress.[4]

2. Patterson contends that insufficient evidence supported his burglary conviction because the state presented insufficient evidence of his intent to commit theft after entering the home. OCGA § 16-7-1 (a) provides that: "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ." "The intent necessary for commission of burglary, however, need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises."[5] "Whether [a] defendant entertained [the requisite] intent . . . after entering is a matter for the jury to say, under the facts and circumstances proved. As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent."[6] Finally, "[t]he presence of valuables inside the premises can support an inference of intent to steal, particularly when no other motive is apparent."[7] As the husband testified there were valuables inside the home, the jury was

---

[2] *Clempson v. State*, 144 Ga. App. 625-626 (1) (241 SE2d 495) (1978) (citations omitted).

[3] *Hooper v. State*, 251 Ga. App. 533, 535 (2) (554 SE2d 750) (2001) (footnote omitted).

[4] *Lemons v. State*, 270 Ga. App. 743, 748 (2) (608 SE2d 15) (2004).

[5] *Williams v. State*, 268 Ga. App. 384, 387 (1) (b) (601 SE2d 833) (2004) (punctuation and footnote omitted).

[6] *Kinney v. State*, 155 Ga. App. 95-96 (1) (270 SE2d 209) (1980) (citations and punctuation omitted).

[7] *Addis v. State*, 203 Ga. App. 270, 271 (416 SE2d 837) (1992) (citation and punctuation omitted).

authorized to infer that Patterson intended to commit theft and sufficient evidence supports their verdict.[8]

3. Patterson contends that the state committed prosecutorial misconduct when it presented evidence of a burglary at the house where he was apprehended, asserting that it concerned a separate offense for which he was not being tried. Because Patterson failed to raise this issue in the trial court, it is waived and presents nothing for this court to review.[9]

4. Patterson claims that the trial court erred in rejecting his claim of ineffective assistance of counsel. To prevail on this claim, Patterson must establish, pursuant to *Strickland v. Washington*,[10] that his trial counsel's performance was deficient and that a reasonable probability exists that, but for the deficient performance, the trial would have had a different outcome.

> Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[11]

We need not address both components of the *Strickland* test if the showing on one is insufficient; nor must we address the components in any particular order.[12]

(a) Patterson claims that his trial counsel's performance was deficient because he failed to object to evidence that Patterson was pretending to be asleep when found underneath the deck. He argues that the evidence was irrelevant. Applying the rule that "evidence of the circumstances of a defendant's arrest is admissible in the trial of the charge for which he was arrested,"[13] we find no deficient performance.

(b) Patterson claims that his trial counsel's performance was deficient because he did not object to evidence that a jacket and screwdriver were found under the deck where he had been discovered. He argues that this evidence was irrelevant. The items were found at the location of Patterson's arrest and only days thereafter.

---

[8] See id.; see also *Prothro v. State*, 186 Ga. App. 836, 837 (1) (368 SE2d 793) (1988).

[9] See *Umbehaum v. State*, 251 Ga. App. 471, 474 (4) (554 SE2d 608) (2001).

[10] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[11] *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004) (footnotes omitted).

[12] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

[13] *Blaylock v. State*, 242 Ga. App. 195, 196 (529 SE2d 203) (2000) (punctuation omitted).

They had not been there before the day of the crimes underlying this case. Patterson had been wearing a jacket at the time of those crimes, but was not wearing one at the time of his arrest. Furthermore, Patterson had used a screwdriver to hit the husband in the head during the burglary. Because there was evidence from which the jury could have concluded that the items belonged to Patterson and linked him to the charged crimes, we reject his argument that the cited evidence was irrelevant.

(c) Patterson claims that his trial counsel's performance was deficient because he did not object to Fisher's testimony that a common reason for committing burglary is "some sort of financial gain, some type of gain" and that once a person has committed a crime, that person typically attempts to avoid arrest by fleeing and shedding clothing. Although Patterson argues that Fisher's understanding about burglaries and arrest avoidance in general was irrelevant to his case, we find no reasonable probability that but for an objection to this testimony, the outcome of his case would have been different.

(d) Patterson claims that his trial counsel's performance was deficient because he did not object to or request a mistrial because of evidence that the alarm system of the home where he was apprehended had been triggered shortly before he was found there. He argues that such evidence indicated that a burglary had occurred there, thus implicating him in a separate and unrelated crime for which he received no similar transaction notice or hearing.

As a general rule, any criminal trial evidence tending to show that the accused has committed other criminal acts is irrelevant and inadmissible as it tends to place the accused's character into evidence.[14] But even assuming without deciding that the evidence improperly placed Patterson's character into evidence, we find no reversible error. Moments after the charged crimes, Patterson was found a few blocks away pretending to be asleep under the deck of a house. The husband positively identified Patterson as the perpetrator soon after the charged crimes occurred. The intruder had punched through a Plexiglas window, and there was fresh blood on Patterson's hand at the time of the identification. A screwdriver and jacket, items with which the perpetrator had been seen, were discovered under the deck a few days after Patterson was apprehended there, and those items had not been there the day before the incident. Considering the strength of the evidence of Patterson's guilt, we cannot say that a

---

[14] *McNeil v. State*, 257 Ga. App. 147, 148 (570 SE2d 433) (2002); OCGA § 24-2-2.

reasonable probability exists that, but for defense counsel's failure to object or seek a mistrial, the outcome of Patterson's trial would have been different.[15]

(e) Patterson claims that his trial counsel's performance was deficient because he did not object to Fisher's testimony on redirect that when he arrests individuals, they sometimes protest — particularly when he has arrested the wrong person, but that when he was arresting Patterson and advising him of the charges, "[Patterson] didn't say much of anything at all."

In criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative and thus such a comment will not be allowed even where the defendant has not received *Miranda* warnings or where he takes the stand in his own defense.[16] Improper reference to a defendant's silence, however, does not automatically require reversal.[17] The determination of whether harmless error occurred must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed with the strength of the evidence of defendant's guilt.[18]

In this case, we find the defense counsel's failure to object harmless. Considering the strength of the evidence of Patterson's guilt, we cannot say that there is a reasonable probability that, but for an objection to the cited testimony elicited on brief questioning, the outcome of Patterson's trial would have been different.[19]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JULY 12, 2005.

*Dell Jackson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

[15] See *Moore v. State*, 242 Ga. App. 249, 250-251 (1) (a) (529 SE2d 381) (2000); see also *Earnest v. State*, 262 Ga. 494, 497 (5) (422 SE2d 188) (1992) (determining that given the overwhelming evidence of defendant's guilt, there was no reasonable probability that the deficiency of trial counsel's performance, if any, changed the outcome of the trial).

[16] *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991).

[17] *Allen v. State*, 272 Ga. 513, 515 (5) (530 SE2d 186) (2000).

[18] Id. at 515-516.

[19] See *Bruce*, supra at 682-684 (2); see generally *Allen*, supra at 516; *Chapman v. State*, 263 Ga. 393, 394 (1) (435 SE2d 202) (1993); *Taylor v. State*, 254 Ga. App. 150, 152-153 (3) (561 SE2d 833) (2002).