**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 21, 2017**

# In the Court of Appeals of Georgia

A16A1622 POLANCO v. THE STATE

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Deivi M. Polanco appeals his burglary and aggravated stalking convictions and contends that the evidence adduced at trial was insufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt. Upon our review, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict in accordance with the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense

beyond a reasonable doubt." *Clark v. State*, 283 Ga. App. 884, 886(1) (642 SE2d 900) (2007).

So viewed, the evidence demonstrates that Polanco and the victim were married on March 7, 2007, and were husband and wife throughout the incidents upon which the convictions are based. The victim testified that by "the fall of 2011," the relationship had deteriorated into "[a] lot of fights, arguing, hitting [and] insults." When she had threatened to leave him, Polanco said that he would "put [her] four meters under the ground."

In 2011 and January 2012, Polanco was arrested after domestic violence incidents with the victim. While Polanco was incarcerated for the 2012 incident, the victim moved all of his possessions to Polanco's mother's house, gave his car to his mother, and changed the locks to the apartment. After Polanco was released from jail, he stayed with his mother. He soon began appearing at the victim's residence on several separate occasions – crouching below the window, hiding in a storage closet, and entering the residence and hiding under the bed. In response, the victim obtained a temporary protective order (TPO), which was served on Polanco on April 11, 2012. The TPO ordered that Polanco, among other things, not contact the victim, leave and

2

stay away from the family residence, and surrender all keys and other items associated with the residence.

On April 12, 2012, the victim arrived home and found flowers, a ring, and a note from Polanco inside her apartment. Polanco then approached her from where he had been hiding in the back of the apartment, and fearing for her safety, the victim told him to leave. Polanco eventually left, and the victim called the police. The responding officers discovered that Polanco had gained access to the apartment from a bedroom window and that "[t]he window was off the hinge and the blinds were disarrayed." Fearing that Polanco might come back, the victim and her children stayed in a hotel that night.

The next day, as the victim was sitting in her vehicle preparing to move to a new apartment in the same complex, Polanco approached her and asked for a camera. She picked up her phone and threatened to call the police, but Polanco leaned inside the car and yanked the phone out of her hand. The victim went inside and called the police from a different phone. Polanco was later arrested and convicted of burglary and aggravated stalking.

1. Under OCGA § 16-7-1 (b), a person is guilty of burglary when, without authority and with the intent to commit a felony or theft therein, he or she enters or

3

remains within the dwelling house of another. Polanco argues that the State failed to prove an essential element of burglary, namely, that he entered the dwelling house of another. Polanco contends that he cannot be guilty of burglary because he was authorized to enter his own residence.

In *State v. Kennedy,* 266 Ga. 195 (467 SE2d 493) (1996)*,* the Georgia Supreme Court recognized that while "marriage is a significant factor in the determination of whether one spouse is authorized . . . to enter the separate residence of his or her estranged spouse . . . marriage alone is not an absolute defense to burglary." Id. at 196. The Court held that,

> there are no express marital exemptions nor implicit exclusions in the burglary statute which give a spouse unlimited consent, as a matter of law, to enter the separate residence of his or her estranged spouse . . . [a]n entry into the separate residence of an estranged spouse, without authority and with the intent to commit a felony or theft therein, constitutes burglary.

Id. The jury may consider the fact the Polanco used to live in the residence with his wife and family in determining whether he was authorized to enter the apartment. However, "the fact that [Polanco] may have once lived at the victim's house. . . does

4

not, in itself, give the defendant subsequent authority to enter." (Punctuation omitted.) *Williams v. State*, 268 Ga. App. 384, 386-387(1) (601 SE2d 833) (2004).

Here, the evidence demonstrated that Polanco been arrested for domestic violence against the victim, and that the victim so feared for her safety that a temporary protective order had been issued which required that Polanco leave and stay away from the family residence. Further, Polanco's name was not on the lease for the residence. During Polanco's incarceration, the victim changed the locks to the residence. When he was released from jail, Polanco moved in with his mother and did not live at the residence, and when Polanco later entered the residence, he did so through a bedroom window. Given these circumstances, the jury was entitled to conclude that Polanco no longer lived at the residence and was no longer authorized to enter it. Moreover, "in light of [Polanco's] forcible entry, the jury could infer that [Polanco] knew that he was without authority to be in [his wife's] house." *Williams*, 268 Ga. App at 387. Likewise, there was evidence, based on past domestic violence, to support a finding that, when Polanco entered the apartment, he had the intent to commit a felony therein against the victim. "For such action to constitute burglary, it is not necessary that the felony be committed as long as the intent to commit the felony was present." *Johnson v. State*, 262 Ga. 441, 442 (1) (421 SE2d 70) (1992).

5

See *Patterson v. State*, 274 Ga. App. 341, 343 (2) ( 618 SE2d 81) (2005) ("Whether a defendant entertained the requisite intent after entering is a matter for the jury to say, under the facts and circumstances proved. As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent.") (footnote and punctuation omitted.)

2. Under OCGA § 16-5-91 (a), a person is guilty of aggravated stalking when, in violation of a temporary protective order, he or she contacts another person without their consent, and for the purpose of harassing and intimidating the other person. Polanco argues that the evidence shows that he contacted the victim for a single purpose, namely, retrieving a camera.

Here, a TPO required Polanco to refrain from contacting the victim. Despite the TPO, the evidence demonstrates that Polanco approached the victim at her apartment after the TPO was issued, and the next day while she was in her vehicle. While Polanco argues that the purpose for contact with the victim was only to retrieve the camera and not to intimidate and harass her, "intent is a question of fact to be determined by the jury upon consideration of [Polanco's] words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted." *Holmes v. State*, 291 Ga. App. 196, 198 (1) (661 SE2d 603) (2008) (the

jury was authorized to find Holmes guilty of aggravated stalking even where his stated intent was to "rekindle his failed marriage," not intimidate and harass his ex-wife). We therefore find that the evidence was sufficient for a rational trier of fact to conclude that Polanco was guilty beyond a reasonable doubt of aggravated stalking.

*Judgment affirmed. Rickman and Self, JJ., concur.*