## 43813. DIXON v. THE STATE.
### (352 SE2d 572)

HUNT, Justice.

Robert Lee Dixon was tried by a jury, convicted of the murder of his wife, Mary L. Dixon, and sentenced to life imprisonment.[1] He appeals, enumerating as error the sufficiency of the evidence and the

---

[1] The murder was committed on September 3, 1985. The defendant was indicted on January 14, 1986. The jury returned its verdict on March 6, 1986, and the defendant was sentenced on April 18, 1986. The defendant's motion for new trial, filed May 8, 1986, was denied on July 14, 1986. The transcript was certified by the court reporter on May 27, 1986, and the appeal was docketed in this court on August 18, 1986. The case was submitted for decision without argument on September 8, 1986.

trial court's refusal to admit evidence of a threat against him made by the victim to a co-worker of the defendant the morning before the victim's death.

During their eight-month marriage, Mrs. Dixon drank heavily and spent a great deal of time away from home, returning only to demand money from the defendant. On the morning of September 3, 1985, he stayed home from work, went to cash his Social Security check and encountered the victim who abusively demanded that he give her money and beer. The defendant gave the victim some money after arguing with her about whether she deserved any since she had not come home the previous night. The defendant then proceeded to a pawn shop where he purchased a revolver and ammunition, loaded the gun, and returned to his house where he hid the gun underneath a cushion in a chair in the living room. He then went to his granddaughter's house to talk to the victim who was there but refused to talk to him. The defendant testified that he then returned home and the victim arrived soon thereafter. He stated that he shot the victim in self-defense when she came at him with a butcher knife, threatening to kill him. He telephoned the sheriff's department to report the killing from the home of a friend who lived nearby. That friend testified that the defendant told her he had shot the victim "all over her damn body." The victim was discovered seated and slumped on the couch in the living room of the house, with a butcher knife by her hand. An open suitcase containing some of her clothes was also discovered. During the morning of the shooting the defendant told the victim's brother "the way your sister is going, someone is going to kill her one day." The defendant testified that what he intended by that statement was that if the victim did not stop stealing people's knives and dishes, someone would hurt her. There was evidence that at some time the victim had stolen a knife (not the one found next to her) and that she had injured a former husband with a knife.

A pathologist who performed an autopsy on the victim testified that her death was caused by multiple gunshot wounds to the chest and abdomen with at least four serious wounds in other locations. The pathologist testified that the bullets entered the victim's body generally from right to left from a point higher than the victim, and gave his opinion without objection that she was either bent forward or sitting down at the time of the shooting. He further testified that the victim's blood alcohol content was .31 grams, extremely high, and that she was five foot six inches and weighed 105 pounds.

1. We have reviewed the evidence in the light most favorable to the jury's determination, and we conclude that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant contends the trial court erred by excluding tes-

timony of a threat made by the victim. In an offer of proof, a co-worker stated that he spoke to the victim on the morning of the murder when she called looking for the defendant. He stated that the victim told him that when the defendant showed up "I'm going to denut him." The trial court excluded the co-worker's testimony on the grounds that the statement was inadmissible because it was hearsay and because the threat had not been communicated to the defendant prior to the murder. The defendant argues that the statement, although hearsay, was admissible to show the victim's state of mind and attitude.

The general rule is that evidence of threats previously made by one who is killed by another but uncommunicated to the latter, are not admissible on the question of whether the defendant was justified in killing the victim. However, such evidence is admissible where there is a conflict in the evidence as to who started the fight, to corroborate evidence of threats which in fact were communicated, and to establish the attitude of the deceased. *Warrick v. State*, 125 Ga. 133, 138 (2, 3) (53 SE 1027) (1906).[2] See also Daniel, Handbook on Criminal Evidence, § 2-16 (1986).

In this case, the defendant testified that he shot his wife in self-defense. Furthermore, his testimony was supported by that of his granddaughter who stated that when the defendant left her house after his futile attempt to talk to the victim, and shortly before the defendant killed the victim, the victim told her that "she [the victim] had to go and stop that M. F." and that when the granddaughter asked what she meant by that, the victim "told me that I would hear about it later," and then went off after the defendant. The victim's uncommunicated threat made to the defendant's co-worker was relevant to show her state of mind at the time the defendant shot her, *Warrick*, supra, and, contrary to the state's contention, the proper foundation had been laid for the admissibility of this evidence through the testimony of the defendant's granddaughter. *Wilson v. State*, 168 Ga. 672, 677 (3) (148 SE 586) (1929). Therefore, the trial court erred by excluding this evidence. However, we find this error to

---

[2] While there appear to be no recent Georgia decisions on this issue, the general rule is that evidence of the victim's uncommunicated threats against the defendant is admissible to show who was the probable aggressor or to show the victim's motive, intention, state of mind, or disposition towards the defendant. See Annotation: Admissibility of Evidence of Uncommunicated Threats on Issue of Self-defense in Prosecution for Homicide, 98 ALR2d 9 (1964). See also McCormick on Evidence, § 295, pp. 700-701 (1972). The victim's uncommunicated threat in this case would be admissible under Federal Rule of Evidence, 803 (3) which provides a hearsay exception to declarations of intent without regard to the availability of the declarant. While Rule 803 (3) does not address the question of admissibility for the purpose of proving the doing of the intended act by the declarant, any relevancy problem is readily resolved in favor of admissibility under modern concepts of relevancy. McCormick on Evidence, § 295 (n. 68) (1978) (Pocket Part to 1972 edition).

be harmless. The excluded statement was cumulative of the testimony of the defendant and of his granddaughter. We further find the error harmless beyond a reasonable doubt due to the overwhelming evidence of guilt, including the evidence that the defendant purchased and hid the gun shortly before he shot the victim and the evidence that the victim was a small woman, was shot from a point higher than herself, and was highly intoxicated at the time she was shot by the defendant, and therefore unlikely to present a physical threat to him.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 13, 1987.

*Michael C. Garrett,* for appellant.

*Sam B. Sibley, Jr., District Attorney, Peter D. Johnson, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.