## A98A1640. HAMMOND v. THE STATE.
(504 SE2d 768)

Judge Harold R. Banke.

Phillip Hugh Hammond was convicted of voluntary manslaughter, aggravated assault, aggravated battery and possession of a firearm during the commission of a crime. He enumerates three errors on appeal.

This case arose in the wake of Hammond's April 1997 divorce from the mother of his two daughters, Donna Hammond. During

---

their three-year period of separation and after the divorce, Donna remained in the marital residence, which was located a few hundred feet from Hammond's mobile home and near Hammond's parents and his sister and her family.

Donna met the victim in March 1995, after separating from Hammond. She started dating him two or three weeks later and began having sexual relations with him at the end of April. A temporary order reflecting the Hammonds' pre-divorce settlement agreement included a provision prohibiting the parties from having overnight visitors of the opposite sex when the children were present.

On the night of the offenses, Hammond had driven several hundred miles to deliver a load of wheat straw. He arrived at home and consumed a mixed drink with dinner. Then he telephoned Donna and asked to speak to his children.

The victim arrived at Donna's home a few minutes before this call with a blood alcohol level of approximately .29 grams. He had spent the previous night with Donna notwithstanding the children's presence in the home.

After Donna informed Hammond that the girls were asleep, he mentioned the victim's recent arrival and stated, "I'm tired of keeping him in a place to live and you know you're not supposed to have overnight guests." After the call concluded, Donna told the victim, "He's at it again."

At that point, the victim called Hammond. Hammond and his ex-wife gave contradictory accounts of the substance of this conversation. She testified that the victim asked Hammond, "Do we have a problem," and then stated "No, you don't keep me in a place to live, I'll meet you in the road and we'll work it out." Notwithstanding the conciliatory tenor of this language, Donna subsequently admitted that the victim was "angry." Hammond testified that the victim stated, "You G—mn son of a b—ch, I'm coming up there to your house in a few minutes, and if you don't come out, I'm coming in and dragging your g—mn ass out . . . and I'll f—k you up and I'll f—k your old lady up and I'll bust your g—mn house up."

After hanging up the phone, it is undisputed that the victim headed for the door, but Donna would not let him out. Responding to his protestations, she stated, "No, there's no sense in this. It's not worth it." Ultimately, the victim picked up the 196-pound Donna, moved her away from the door, and sped toward Hammond's home in his stockinged feet. Rather than changing from her tee-shirt and underwear, Donna immediately followed the victim, begging him not to go. Then she got in her car and followed him the few hundred yards to Hammond's home, still entreating him to return home.

The victim stopped in Hammond's driveway and yelled, "Hammond, I'm here." Donna parked behind him and tried to pull him into

her car. Hammond stepped from his front door, carrying a shotgun at his side with the barrel pointing toward the ground. After Hammond approached the victim, the gun was fired, and the victim was mortally wounded.

At the time of the shooting, Donna told a police officer that the victim had grabbed the shotgun and it went off. The officer memorialized this statement in a written report. At trial, however, Donna denied making this statement and testified that when Hammond was face-to-face with the victim, no more than three feet away, he put the gun to his shoulder and shot. *Held*:

1. The trial court erred in applying Uniform Superior Court Rule 31.6 to exclude testimony that the victim had threatened to kill Hammond two months prior to the offenses. Before defendants asserting a justification defense may present "evidence of relevant specific acts of violence by [a] victim," Rule 31.6 requires that they provide notice to the State at least ten days prior to trial. Because the evidence at issue involved threats rather than specific violent acts, Rule 31.6 had no application. Notwithstanding the State's contention to the contrary, a terroristic threat is not an act of violence within the meaning of the rule. See *Lowe v. State*, 267 Ga. 410, 414 (5) (a) (478 SE2d 762) (1996) (victim's "threats and menaces" insufficient to show acts of violence); *Bennett v. State*, 265 Ga. 38, 40-41 (3) (453 SE2d 458) (1995) (victim's burglary convictions did not constitute acts of violence).

Further, the exclusion of this evidence in the circumstances of this case was error. Where there is a conflict in the evidence as to who is the aggressor, evidence of threats previously made but uncommunicated to the defendant are admissible to corroborate evidence of threats which were in fact communicated. *Dixon v. State*, 256 Ga. 658, 660 (352 SE2d 572) (1987). This rule clearly applies to the facts in this case. Because this was a very close case with Hammond and his ex-wife offering directly contradictory evidence, we cannot say that the error was harmless.

2. Hammond maintains that the trial court erroneously prevented him from cross-examining his ex-wife about the victim's admission that he had disarmed a police officer whose gun was pointed at him in a manner similar to Hammond's version of the facts here.[1] On retrial, this evidence of a prior act of violence by the victim clearly would be admissible assuming Hammond complies with Rule 31.6. See *Chandler v. State*, 261 Ga. 402, 407-408 (3) (b), (c) (405 SE2d 669) (1991); see also *Roper v. State*, 263 Ga. 201, 202 (2)

---

[1] Donna first disclosed this evidence during the defense's proffer outside the jury's presence in the context of cross-examination of her knowledge of the victim's criminal record.

(429 SE2d 668) (1993).

3. In light of this finding, we need not reach the remaining enumeration. See *Billy Cain Ford Lincoln Mercury v. Kaminski*, 230 Ga. App. 598, 602 (4) (496 SE2d 521) (1998).

*Judgment reversed. Johnson, P. J., and Smith, J., concur.*

DECIDED JULY 28, 1998.

*Cook & Connelly, Bobby Lee Cook, Hamil & Dickinson, David L. Dickinson, Alan J. Baverman*, for appellant.

*Garry T. Moss, District Attorney*, for appellee.