## A04A1197. PRESSLEY v. THE STATE.
### (603 SE2d 699)

PHIPPS, Judge.

Ashley Pressley appeals his criminal trespass conviction, arguing that the trial court erred by denying his motion for a directed verdict of acquittal and by excluding relevant evidence. Finding no error, we affirm.

Raymond Yarbough, a MARTA bus driver, testified that on the night of December 19, 2002, he stopped at what he thought was the end of his route and asked his last passenger, Pressley, to exit the bus. Pressley refused, telling Yarbough that he had to complete his run and continue up a nearby hill. Yarbough responded that he was going to drive to the MARTA garage and that Pressley needed to get off the bus. Pressley again refused, threatened to "beat [Yarbough's] ass," and looked "ready to fight."

Yarbough tried twice to contact MARTA officials by radio, but received no answer. He began to examine his route sheet, but abandoned that effort because Pressley "was getting kind of violent." Yarbough then drove the bus to the MARTA garage. Before driving through the gate, Yarbough told Pressley once more to exit the bus, but Pressley did not move.

Inside the garage, Yarbough parked the bus and told a bus cleaner that Pressley would not leave. Yarbough testified that he

later saw Pressley inside the dispatcher's office and offered Pressley a ride home in his personal vehicle. According to Yarbough, the dispatcher said that the police had been called and that Pressley should stay there.

The dispatcher, Sema Hall, Jr., testified that Pressley came to his office that night angry because "a bus driver didn't take him to his destination." Hall told Pressley that he was on private property, that he needed to leave the office, and that he could call MARTA's complaint department in the morning. Pressley demanded to see Hall's supervisor. Hall explained that he *was* the night supervisor, but Pressley said that "he wasn't leaving the premises until he saw somebody higher than [Hall]." Yarbough entered the office and offered Pressley a ride home, but — according to Hall — Pressley refused the offer, continued "being belligerent," and threatened to "kill everybody up in there." Hall called the MARTA police.

Two MARTA police officers responded to the call. One of the officers testified that when they reached the dispatcher's office, Pressley was standing in the doorway. He asked Pressley to exit the office, but Pressley — using profanity — replied that he was not going anywhere. After a second request, Pressley did step out of the office, but he kept interrupting the officers' attempts to question the dispatcher. The officer testified that he tried to question Pressley, but "he kept refusing to talk to me and cursing."

Eventually, the officer told Pressley to leave the property or he would be arrested for criminal trespass. Pressley would not leave, so the officer told him to put his hands behind his back. Pressley refused. The officer then told Pressley that if he did not comply, the officer would have to use pepper spray. According to the officer, Pressley replied, "Spray me." The officer did so, and Pressley submitted to arrest.

Pressley testified that Yarbough stopped the bus in an unfamiliar area, before the end of its scheduled route. Pressley asked Yarbough to continue on, but Yarbough said, "[You] can't tell [me] how to drive [my] bus." Pressley testified that when he got to the dispatcher's office, he said that he had no more money, but the dispatcher was indifferent to his predicament and ordered him off the property. Pressley denied using profane language and explained that he is "always calm." He claimed that he tried to tell his story to the MARTA police officers, but they refused to listen and arrested him.

Yarbough's supervisor testified that she investigated the incident and determined that he had not completed his route that evening. Yarbough testified that although he thought he had completed the route, he later learned that he was supposed to continue to the stop where Pressley had wanted to go. Yarbough received a ten-day suspension after the incident.

Pressley was charged with criminal trespass for remaining at the MARTA garage knowingly and without authority after receiving notice to depart. He also was charged with obstruction of an officer. The jury found him guilty of criminal trespass, but not guilty of obstruction.

1. Pressley argues that the trial court should have granted his motion for a directed verdict of acquittal.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

(a) Under OCGA § 16-7-21 (b), a person commits criminal trespass if he enters or remains on the property of another without authority and with the knowledge that he has been given notice that his presence is forbidden.[2] Pressley argues that statute should not apply to him because he was forcibly brought into the MARTA garage by a representative of the property owner. The evidence shows without dispute, however, that Yarbough told Pressley to exit the bus and gave him multiple opportunities to do so before driving the bus to the MARTA garage. Thus, there is no basis for Pressley's claim that he was an "abductee."

(b) Pressley also argues that he cannot be guilty of criminal trespass because he had authority to be at the garage. He contends that, having paid to ride the bus, he had a contractual right to remain on board until the bus reached its "proper destination" and that he was not required to follow Yarbough's commands to exit.

Pretermitting whether Pressley was entitled to enter the MARTA garage on the bus because he had paid for the ride and the driver had refused to take him to a stop on the bus's route, we find that Pressley was not entitled to remain in the garage. Under OCGA § 16-12-120 (a) (9), it is a misdemeanor for a person to "remain[ ] aboard any public transit bus . . . after having been warned and after such vehicle has entered a garage or other restricted area not open to the public." Thus, regardless of how Pressley arrived at the garage, once he got

---

[1] (Footnote omitted.) *Johnson v. State*, 255 Ga. App. 537 (566 SE2d 349) (2002).

[2] *Williams v. State*, 261 Ga. App. 511, 512 (1) (583 SE2d 172) (2003); *Strozier v. State*, 187 Ga. App. 16, 17 (2) (369 SE2d 504) (1988).

there he was in a restricted area not open to the public and was required to obey MARTA's request that he leave.

This request was not unreasonable under the circumstances. According to the state's evidence, Pressley became increasingly belligerent after he entered the garage. He used profane language and threatened to kill people. After the police were called, he disrupted their investigation, refused to talk to them, and cursed at them. Although Pressley denied behaving this way, the jury was entitled to believe the state's witnesses.[3] There was sufficient evidence to permit the jury to conclude that Pressley committed criminal trespass by refusing MARTA's lawful request that he leave the garage.[4]

(c) Pressley argues that the state failed to prove that he was given a sufficient amount of time to exit the garage before his arrest. To be guilty of criminal trespass, a person who has been advised to leave must be given a reasonable amount of time to do so.[5] What constitutes a reasonable amount of time in the circumstances is a question for the jury.[6] Three different MARTA representatives — the bus driver, the dispatcher, and the MARTA police officer — testified that they asked Pressley to leave MARTA property, but he refused. From this testimony, the jury could have concluded that Pressley was given ample opportunity to vacate the premises.

2. Pressley claims that the trial court erred by excluding MARTA records showing that Yarbough had been disciplined for failing to complete his route on the night in question. But defense counsel did not seek to introduce any documentary evidence of the investigation or suspension at trial. Thus, we find no error. Moreover, as the jury heard testimony about the investigation and suspension, Pressley was not prejudiced by the lack of documentary evidence.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED AUGUST 13, 2004.

*Pekor & DeWoskin, Charles B. Pekor, Jr., Daniel E. DeWoskin*, for appellant.

---

[3] See *Ginn v. State*, 251 Ga. App. 159, 160 (2) (553 SE2d 839) (2001) (jury determines credibility of witnesses and resolves conflicts in testimony).

[4] See *Reid v. State*, 224 Ga. App. 524-525 (1) (481 SE2d 259) (1997) (man who had brought his son to the hospital, but later caused a disturbance and refused a security guard's order to leave, was guilty of criminal trespass).

[5] Id. at 525.

[6] Id.; see also *Bullock v. Jeon*, 226 Ga. App. 875, 876 (1) (487 SE2d 692) (1997).

*Carmen D. Smith, Solicitor-General, Jody L. Peskin, Assistant Solicitor-General*, for appellee.