S05A0301. SMITH v. THE STATE.
(611 SE2d 1)

CARLEY, Justice.

Scott Smith was convicted of malice murder of his mother, burglary of her home, and hindering the police officer who arrested him. The trial court imposed a life sentence for murder, a 20-year consecutive sentence for burglary, and a 12-month consecutive sentence for hindering the policeman. The trial court denied a motion for new trial, and he appeals from the judgments of conviction and sentences entered on the jury's guilty verdicts.[1]

1. Smith challenges the sufficiency of the evidence to prove his guilt of malice murder and burglary.

Smith and his mother, Linda Ann Jacobs, had a volatile relationship. After his release from prison, he moved in with her and his

---

[1] The crimes were committed on August 1, 2002. The grand jury indicted Smith on October 25, 2002. The jury returned the guilty verdicts on June 20, 2003, and the trial court entered the judgments of conviction and imposed the sentences on July 1, 2003. Smith filed a motion for new trial on July 28, 2003, which the trial court denied on July 12, 2004. Smith filed a notice of appeal on July 27, 2004, and the case was docketed in this Court on October 19, 2004. The appeal was submitted for decision on December 13, 2004.

stepfather, but she soon asked him to leave the house. When Mrs. Jacobs indicated that she intended to inform his probation officer that he would not work, he responded that he was not going to return to prison and he threatened to kill her. Smith refused to return the key that he had been given, so his mother and her husband took measures intended to prevent him from gaining entry into the residence. Two days before her death, she called the police to complain of an "unwanted guest" in her home. Because Smith previously paid some rent, the officer who responded to Mrs. Jacobs' complaint did not force him to leave and advised her to file a dispossessory action. Later that evening, Smith called the police to report that, after the officer left, his mother attacked and scratched him. She denied assaulting him, but she was arrested on a charge of simple battery. In her absence, he left the residence. Mrs. Jacobs spent the night in jail.

On the day of the homicide, Mr. Jacobs tried to call his wife at home. Concerned because she did not answer the phone, he called the police. When Mr. Jacobs arrived at the house, an officer was already there. Through a window, they saw Smith at the back door. He was placing items in a bag. Mr. Jacobs informed the officer that Smith did not have permission to enter the house. When confronted by the policeman, Smith acknowledged that he was not authorized to be there. Smith ran when the officer attempted to handcuff him. The policeman pursued Smith and, after a struggle, eventually subdued him. In the meantime, Mr. Jacobs discovered his wife's body in the house. Her bloody head was wrapped in towels bound with black electrical tape. She had died as a result of massive head injuries caused by blows from an edged weapon, such as a lawn mower blade, hatchet or a similar object. Certain items belonging to Mr. and Mrs. Jacobs were found either on Smith's person or stashed in bags outside the home. Included among the numerous items taken from the house were Mrs. Jacobs' rings, a lawn mower blade and a hatchet.

Smith testified that he asked his mother for permission to come into the house to use the toilet. He said that she agreed, but that she attacked him with her hands and a hatchet as he came out of the bathroom. He contended that he did not remember striking her, but recalled that he tried to stop her bleeding with the towels. Smith admitted taking Mrs. Jacobs' jewelry and other items from the residence. He claimed that his mother physically abused him as a child, and an expert testified that he suffered from post traumatic stress disorder.

This evidence showed that Smith killed his mother and, "[t]o the extent that [he] testified that he acted in self-defense, the jury was free to either accept or reject his testimony. [Cit.]" *Knight v. State*, 271 Ga. 557, 559 (1) (521 SE2d 819) (1999). The evidence also authorized a finding that he acted with malice, and it did not demand a finding

that he was a battered person who was justified in killing the victim. *Austin v. State*, 275 Ga. 346 (1) (566 SE2d 673) (2002).

With regard to the burglary charge, Smith contends that the State failed to prove that his entry into the residence was unauthorized. However, the claim that his mother invited him into her home was highly suspect, considering the level of animosity which characterized their recent relationship. Moreover, since the jury was authorized to find that he completely vacated the premises, he did not have any reason to be in the vicinity. Under the evidence, the only reasonable hypothesis is that Smith killed his mother when, without authority, he entered the house to commit a theft therein. See *Littleton v. State*, 225 Ga. App. 900, 902 (3) (485 SE2d 230) (1997). Thus, the record supports the finding that Smith was not authorized to enter the residence from which he stole items that did not belong to him. See *Williams v. State*, 268 Ga. App. 384, 386 (1) (b) (601 SE2d 833) (2004); *Armour v. State*, 247 Ga. App. 592 (1) (544 SE2d 516) (2001).

When construed most strongly in support of the verdicts, the evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of Smith's guilt of malice murder and burglary, as well as hindering the arresting officer. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court gave a pattern jury charge on the definition of burglary which properly tracked the language of OCGA § 16-7-1 (a) and, thus, which included the principle that an entry "without authority" is an essential element of that offense. See *Adams v. State*, 271 Ga. 485, 488 (4) (521 SE2d 575) (1999). Smith nevertheless urges that this instruction was erroneously incomplete, because it failed to elaborate on the concept of unauthorized entry and to distinguish between authorized and unauthorized entry. However, he did not submit a written request for any additional clarifying charge. " 'The giving of an otherwise correct charge is not rendered erroneous for lack of an additional explanatory charge, in the absence of an appropriate request. (Cit.)' [Cit.]" *Skaggs v. State*, 278 Ga. 19, 22 (4) (596 SE2d 159) (2004).

Smith urges that a written request was unnecessary, because a trial court must charge sua sponte on a defendant's sole defense if it is supported by some evidence. *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). However, the law does not recognize "authorized entry" as a separate and discrete defense to the crime of burglary. Compare *Tarvestad v. State*, supra (justification). Smith's applicable defense was the failure of the State to carry the burden of proving that his entry into his mother's home was unauthorized. See *Thompson v. State*, 271 Ga. 105, 106-108 (1), (2) (519 SE2d 434) (1999). The record shows that the trial court fully instructed the jury

on the prosecution's burden of proving beyond a reasonable doubt the essential elements of the crimes for which Smith was being tried. When this charge is considered in conjunction with that which tracked the language of OCGA § 16-7-1 (a), the jurors were given complete and correct instructions as to Smith's sole defense to the crime of burglary.

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 28, 2005.

*James E. Goad, Christopher G. Paul*, for appellant.
*T. Joseph Campbell, District Attorney, Erik J. Pirozzi, Assistant District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General*, for appellee.