A06A0217. BILOW v. THE STATE.
(631 SE2d 743)

Adams, Judge.

Charles Emmett Bilow ("Charlie") appeals after a jury convicted him on one count of burglary, one count of aggravated assault and one count of criminal trespass.[1] We affirm.

Viewed in the light most favorable to support the verdict, the evidence at trial showed that Charlie and Tracy Bilow divorced on March 3, 2004 after 14 years of marriage. During their marriage, the Bilows lived in a mobile home on property owned by Tracy, and she was awarded both the mobile home and the property in the divorce proceedings. After the divorce, the Bilows maintained a relationship and Charlie sometimes stayed at Tracy's mobile home. Tracy testified, however, that she made one rule: that Charlie was not to come to her trailer when he was drunk.

On March 25, 2004, Charlie worked during the day with his brother and employer, Richard Bilow. Richard testified that he dropped Charlie off at the mobile home after work and planned to meet Charlie there the next morning to give him a ride to work. Tracy testified that when she first saw Charlie that evening, he was inebriated. He rode up on his bicycle from his parents' house and sat on the back steps. Charlie then got a ladder and began unscrewing the light bulbs from Tracy's motion-detector lights, telling her that he was "cutting [her] security." After Tracy climbed the ladder and began to screw the bulbs back in place, Charlie ran at the ladder as if he were going to knock her off. But there were people in the yard next door, so Charlie left.

Charlie returned about forty-five minutes later carrying two bottles of wine and began to argue with Tracy. During the argument, Charlie pulled out a partially opened black-handled pocket knife and threatened to kill her. Tracy told him to leave. When he did not leave, Tracy called the police. The sheriff's deputies who responded told Charlie to pour out the alcohol he was drinking and instructed him to leave. Charlie took a sip and then poured the two bottles out onto the

---

[1] The jury acquitted Bilow on two other counts of aggravated assault.

trailer floor. He told the officers he would leave. At that time the officers did not believe that they had enough evidence to place him under arrest.

Tracy testified that Charlie returned later and was still angry. They argued again and Tracy said that she grabbed a metal bar to protect herself. She hit the bar on a chair to scare Charlie, but he took the bar away from her and began to beat her on her arms and legs. He also began to choke her. Tracy testified that she almost passed out before Charlie released his grip on her neck. She again called police, and Charlie left before they arrived. The deputies observed marks on Tracy's arms, legs, and neck, and one of the deputies took photographs of her injuries, which were introduced into evidence at trial. The other deputy secured Tracy's door using a wire hanger to keep it shut, but Tracy testified that Charlie later "snatched" the wire off in order to come inside the house.

Tracy called the police a third time that night after Charlie returned, and she reported that he had beaten her again with the bar. After that incident, the deputy stayed with Tracy for a while but never saw Charlie. Tracy summoned police a fourth time, and one of the deputies testified that she saw Charlie exiting the rear door of the trailer as she arrived. Although the officers searched for him in the area around the trailer, they were not able to find him. Because Tracy was so upset, one deputy decided to stay with her for a while but eventually left to retrieve her own car. Right after the deputy left, Charlie returned and knocked on the trailer door. But the deputy saw Charlie, and returned and placed him under arrest.

The state also introduced evidence of prior difficulties between Charlie and Tracy showing that the police had been called to the residence on at least three prior occasions on domestic violence calls. The state introduced a copy of Charlie's guilty plea to a charge of simple assault in connection with one of these incidents.

Charlie testified at trial that when the deputies arrived at the trailer on the first occasion, he asked if he could leave and that he was never told to leave. He stated that when he was unable to get a ride, he went into the trailer to retrieve a coat and a sleeping bag and then went into a field to sleep. He used an alarm clock to wake himself in time to get to work. He said that he returned to the trailer that morning to catch his ride to work. He stated that he was unaware that Tracy had called the police several more times that night.

1. Charlie contends the evidence was insufficient to support his convictions. In making this argument, Charlie points to what he argues are inconsistencies and conflicts in the evidence and asserts that the evidence against him was purely circumstantial. In addition, Charlie argues that because the evidence showed that he resided in

the trailer and had the authority to enter it, he could not be guilty of burglary or criminal trespass.

It is well settled that on appeal an appellant no longer enjoys a presumption of innocence and this Court determines only evidence sufficiency. We do not weigh the evidence or determine witness credibility. *Cook v. State*, 276 Ga. App. 803, 804 (1) (625 SE2d 83) (2005). Here the evidence was sufficient to support Charlie's convictions.

"OCGA § 16-7-1 (a) provides that a person commits a burglary when he enters the dwelling or building of another, without authority, and with the intent to commit a felony or theft therein." *Morton v. State*, 276 Ga. App. 421 (1) (623 SE2d 239) (2005). And "[u]nder OCGA § 16-7-21 (b), a person commits criminal trespass if he enters or remains on the property of another without authority and with the knowledge that he has been given notice that his presence is forbidden." (Footnote omitted.) *Pressley v. State*, 269 Ga. App. 143, 145 (1) (a) (603 SE2d 699) (2004). There was sufficient evidence for the jury to find that the trailer belonged solely to Tracy and that Charlie stayed there on occasion with her permission. Moreover, Tracy testified that she made a firm rule that Charlie was not allowed at the trailer when he was drinking alcohol. The evidence established that Charlie entered the trailer that night on several occasions without Tracy's permission, after he had been drinking and after having been ordered from the trailer both by Tracy and by police. "[O]nce the victim . . . withdraw(s) the defendant's authority to enter her house, the fact that the defendant may have once lived at the victim's house and had left personal property within the house does not, in itself, give the defendant subsequent authority to enter." (Punctuation and footnote omitted.) *Williams v. State*, 268 Ga. App. 384, 386-387 (1) (b) (601 SE2d 833) (2004). Moreover, the jury was authorized to find on the evidence that Charlie entered the trailer on at least one occasion with the intent to assault Tracy. Accordingly, the evidence was sufficient to support Charlie's convictions on the charges of burglary and criminal trespass. See *Smith v. State*, 279 Ga. 172, 174 (1) (611 SE2d 1) (2005); *Pressley v. State*, 269 Ga. App. at 145 (1) (a); *Williams v. State*, 268 Ga. App. at 386 (1) (b); *Armour v. State*, 247 Ga. App. 592 (1) (544 SE2d 516) (2001). And the evidence that Charlie struck Tracy with the bar was sufficient to support his conviction on the aggravated assault charge. See *Coppock v. State*, 273 Ga. 324 (1) (540 SE2d 187) (2001); *Peek v. State*, 234 Ga. App. 731, 732 (1) (507 SE2d 553) (1998).

The fact that Charlie offered another version of the events of that night does not render the other evidence against him insufficient or circumstantial. "A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses[,] and it serves as the arbiter of

conflicts in the evidence before it." (Citation and punctuation omitted.) *Campbell v. State*, 258 Ga. App. 863, 866 (575 SE2d 748) (2002). In this case, the jury obviously chose to disbelieve Charlie's version of the events, and the remaining evidence was sufficient to convince a rational trier of fact of Charlie's guilt beyond a reasonable doubt.

2. Charlie also asserts that his conviction should be reversed because new evidence was discovered after the trial that would likely have produced an acquittal if the jury had been aware of it. The proffered evidence consists of an affidavit from Tracy's father, who previously had adopted Charlie's and Tracy's minor children. He averred that on March 24, the day before the assault, he told Charlie and Tracy that if they wanted to get their children back, they "needed to get themselves straightened out." After Charlie's arrest, he asked Tracy what had happened. He states that Tracy first told him that Charlie had assaulted a police officer and then told him that Charlie had assaulted her. She later told him that with Charlie gone, she could now get her children back. Charlie asserts that because his defense at trial was that Tracy had fabricated the assault, this evidence was vital to establish motive.

In order to procure a new trial based upon subsequently discovered evidence, a defendant must satisfy the court:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Citation omitted.) *Tessmer v. State*, 273 Ga. 220, 226 (7) (539 SE2d 816) (2000). "All six requirements must be complied with to secure a new trial." *Cato v. State*, 195 Ga. App. 619, 620 (2) (394 SE2d 413) (1990). We agree with the trial court's finding that this evidence was offered only to impeach Tracy's testimony. Because the only effect of this evidence would be to impeach the "credit of a witness," Charlie has failed to establish the sixth requirement and no new trial is warranted. Accordingly, the trial court did not abuse its discretion in denying Charlie's motion for a new trial on this ground. See *Tessmer v. State*, 273 Ga. at 226 (7); *Jackson v. State*, 191 Ga. App. 244, 245 (3) (381 SE2d 392) (1989).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MAY 23, 2006.

*Burnette & Driggers, Benjamin D. Driggers,* for appellant.
*Howard Z. Simms, District Attorney, Pamela White-Colbert, Assistant District Attorney,* for appellee.