## A08A0587. BURNETTE v. THE STATE.

(662 SE2d 272)

MIKELL, Judge.

Jeanette Denise Burnette was convicted of aggravated assault and criminal trespass and was sentenced to fourteen years and twelve months, consisting of four years to serve and ten years on probation. On appeal, Burnette contends that the trial court erred by denying her claim of ineffective assistance of counsel, by refusing to charge the jury on self-defense, and by denying her motion to reopen the evidence. We affirm.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence.[1] The evidence is viewed in a light most favorable to the jury's verdict.[2] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty of the crimes charged beyond a reasonable doubt.[3]

So viewed, the evidence shows that Burnette was Gerry Wayne Rouse's live-in girlfriend. Rouse was separated from his wife, Betty J. Rouse. On May 21, 2006, Ms. Rouse went to her husband's house. She testified that he did not want her inside the house, although he denied that anyone else was there. The two of them went outside and talked for fifteen to twenty minutes. Ms. Rouse was sitting in her car. Then Burnette came outside with a pipe in her hand, threatening Ms. Rouse. Rouse tried to get the pipe away from Burnette, but she grabbed it from him, swung it against the car window, which shattered the glass, and then struck Ms. Rouse in the head. Ms. Rouse suffered a broken jaw bone, requiring surgery; a gash in her temple that needed stitches; a permanent scar; and a blood spot in her eye that was visible at the time of trial, nearly a year later.

After the incident, Ms. Rouse drove herself to the sheriff's office. She relayed the incident to Deputy Anthony Watson, who proceeded to Rouse's residence and spoke with Burnette. Burnette told Watson that while in the bedroom, she had heard Ms. Rouse calling her names; that Burnette got dressed and saw Ms. Rouse outside in her car; and that Ms. Rouse "yelled at her . . . something like, I've got something for you . . . come on out here." Burnette also told Watson that Ms. Rouse "looked like she may have been reaching for something, but [Burnette] went anyway." According to Watson, Burnette also admitted that she grabbed the pipe, went to the car, "drew back and swung and busted the window and hit the woman in

---

[1] See *Bilow v. State*, 279 Ga. App. 509, 511 (1) (631 SE2d 743) (2006).

[2] See *Leonard v. State*, 279 Ga. App. 192 (1) (630 SE2d 804) (2006).

[3] Id.

the face." Watson then arrested Burnette for aggravated assault, and when he placed her in handcuffs, she said, "[T]hat's fine, because it's worth spending the night in jail if I hit her."

Rouse, who testified for the defense, stated that his wife was angry when she came over that day; she called Burnette names and threw Burnette's hairpiece and shoes out in the yard. Rouse recounted three prior incidents in which Ms. Rouse had tried to attack Burnette, including once with a razor. On cross-examination, Rouse denied that he saw Burnette hit Ms. Rouse with the pipe. However, he admitted that Burnette had a pipe in her hand; that he saw the window shatter; that he saw the hole in Ms. Rouse's head; and that he saw her bleeding. On redirect, Rouse testified that Burnette hit Ms. Rouse because Burnette was afraid of her; that he had seen someone coming out from a nearby mobile home, was embarrassed, and told the women he was not going to be between them in the yard; that when he "turned loose, . . . they kind of tussled a little bit"; that Burnette grabbed a piece of wood with a metal tip; and that she swung and hit the glass with the wood. Rouse testified that his wife said that she was going to get a gun, and he thought she would shoot him and Burnette. But he never saw a gun.

During the charge conference, defense counsel orally requested a charge on self-defense. The trial court declined such a charge, reasoning that there had been no evidence from the defense that the act even occurred. Rather, Rouse had testified that he did not know whether Burnette struck his wife; he only saw the damage done. The court determined that Rouse's speculation that Burnette "did whatever she did" because she was afraid of Ms. Rouse was insufficient to raise the defense. The court commented that if Burnette had taken the stand and testified that she did it but was only protecting herself, then the court would give the charge. Thereafter, defense counsel made a motion to reopen the defense case to permit the defendant to testify on the issue of self-defense. The court denied the request, noting that it had been made only after the court decided not to charge the jury on self-defense. The court noted counsel's exception to this ruling. Counsel argued in closing, as he had in his opening statement, that Burnette had acted "reasonably based on her past experience" with the victim.

The jury found Burnette guilty of aggravated assault and criminal trespass. Following a hearing, the trial court denied her motion for new trial.

1. Burnette asserts that the trial court erred in rejecting her claim that trial counsel rendered ineffective assistance.

> To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the defi-

ciency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies.[4]

The "reviewing court need not address both components if the defendant makes an insufficient showing on one, nor must the components be addressed in any particular order."[5] An ineffective assistance claim presents a mixed question of law and fact; therefore, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts.[6] The defendant must overcome the "strong presumption . . . that trial counsel performed within the wide range of reasonable professional assistance."[7] "Finally, we will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[8]

(a) *Voir dire*. The trial court failed to ask the qualifying voir dire questions that are required by OCGA § 15-12-164 (a)[9] in all felony cases, and trial counsel failed to object. By failing to object or to request additional voir dire, trial counsel waived appellate review of this issue.[10] Burnette contends that such failure constitutes ineffective assistance. Counsel testified at the new trial hearing that he was unaware that the trial court was required to ask the statutory questions.

Assuming counsel's performance was deficient, Burnette cannot show that the outcome of her trial would have been different had the court asked the statutory questions. The prosecutor asked the potential jurors whether they were acquainted with the defendant or the victim, and if so, whether they could remain impartial. The potential jurors indicated that they had no bias. Further, there is no evidence, and defendant does not contend, that any of the jurors

---

[4] (Citations omitted.) *Cline v. State*, 224 Ga. App. 235, 237-238 (4) (480 SE2d 269) (1997).

[5] (Punctuation and footnote omitted.) *Davis v. State*, 287 Ga. App. 786, 788 (2) (653 SE2d 104) (2007).

[6] Id.

[7] (Citation omitted.) *Leonard*, supra at 194 (2).

[8] (Punctuation and footnote omitted.) *Nichols v. State*, 288 Ga. App. 118, 121 (3) (653 SE2d 300) (2007).

[9] The questions are: (1) "Have you, for any reason, formed and expressed any opinion in regard to the guilt or innocence of the accused?"; (2) "Have you any prejudice or bias resting on your mind either for or against the accused?"; and (3) "Is your mind perfectly impartial between the state and the accused?" OCGA § 15-12-164 (a) (1)-(3).

[10] See *Quick v. State*, 256 Ga. 780, 783 (3) (b) (353 SE2d 497) (1987).

were, in fact, biased or prejudiced against her.[11] Accordingly, this claim of ineffectiveness fails.[12]

(b) *Hearsay testimony*. Burnette also claims that trial counsel did not object to Deputy Watson's testimony as allegedly improper bolstering of the victim's testimony. This claim is not supported by argument or authority and is deemed abandoned.[13]

(c) *Plea offer*. Burnette claims that trial counsel did not communicate to her the state's plea offer, but the trial court found otherwise based on counsel's testimony at the new trial hearing. "[I]t was the function of the trial court hearing the evidence presented to determine witness credibility."[14] This claim of ineffectiveness fails.

(d) *Failure of defendant to testify*. Burnette claims that trial counsel did not discuss with her the need for her to testify. She also asserts that counsel should have called her to testify to establish a justification defense. But counsel testified that he and Burnette did converse on this issue, and they weighed the benefits and disadvantages of her testifying. Based on Burnette's history with the victim, counsel initially advised her not to take the stand. The trial court credited counsel's testimony. "The decision whether or not to testify is a tactical one, made by a defendant with the advice of counsel."[15] "Such advice is trial strategy and generally not subject to challenge for ineffectiveness."[16] Further, counsel testified that he believed that he could introduce evidence of self-defense through Rouse. Finally, Burnette did not testify at the hearing and made no proffer as to what her testimony would have been at trial. In the absence of a proffer, Burnette cannot show that her testimony would have affected the outcome of the case.[17]

(e) *Trial preparation*.

(i) Burnette complains that trial counsel did not communicate or meet with her prior to trial. Counsel testified that he was unable to communicate with Burnette until the day before trial despite multiple attempts to telephone her at every number she provided on her intake sheet. Rouse testified that he believed he received a message from a different public defender on his parents' answering machine, and he and Burnette receive mail at his parents' address. Again, the

---

[11]  See, e.g., *Jones v. State*, 221 Ga. App. 374-375 (1) (471 SE2d 318) (1996).

[12]  See *Head v. Carr*, 273 Ga. 613, 622-623 (4) (C) (2) (544 SE2d 409) (2001) (actual prejudice must be shown in an ineffective assistance of trial counsel claim regarding voir dire).

[13]  Court of Appeals Rule 25 (c) (2).

[14]  (Citation and punctuation omitted.) *Copeland v. State*, 281 Ga. App. 11, 14-15 (3) (d) (635 SE2d 283) (2006).

[15]  (Footnote omitted.) *King v. State*, 279 Ga. App. 302, 303 (1) (630 SE2d 905) (2006).

[16]  (Footnote omitted.) Id. See also *Lowery v. State*, 260 Ga. App. 260, 262 (3) (581 SE2d 593) (2003).

[17]  *Thomas v. State*, 285 Ga. App. 290, 293-294 (2) (645 SE2d 713) (2007).

508

trial court credited trial counsel's testimony and determined that he could not be faulted for Burnette's failure to provide him with adequate contact information. Burnette "cannot now complain of counsel's alleged deficiencies that were caused by [her] own failure to communicate and fully cooperate with counsel."[18]

(ii) Burnette claims that trial counsel failed to investigate possible defenses and potential defense witnesses on her behalf. At the new trial hearing, Rouse testified that on the day of trial, he told counsel about potential witnesses, but it was too late to summon them. But Burnette did not call the witnesses to testify at her new trial hearing or otherwise show what their testimony might have been; thus, she has not established that the outcome of the trial would have been different had trial counsel interviewed and subpoenaed them.[19]

(iii) Burnette complains that trial counsel did not adequately prepare Rouse to testify at trial and failed to elicit testimony from Rouse in support of a self-defense claim. At the new trial hearing, counsel testified that as soon as he looked at the file, he took every opportunity he could to get in touch with both Burnette and Rouse. When counsel finally was able to contact Rouse, Rouse relayed what he had witnessed on the date of the incident and told counsel that Ms. Rouse had been the aggressor. Although Rouse testified that they did not discuss his testimony, the trial transcript shows that counsel elicited testimony from Rouse concerning prior acts of violence committed by his wife against Burnette, the possibility that Ms. Rouse may have been armed, and her angry demeanor. At the new trial hearing, counsel testified that he was attempting to show that since Ms. Rouse had been the aggressor on previous occasions, Burnette had reason to be afraid of her in this instance. At trial, counsel asked Rouse to "describe what transpired that day when [Ms. Rouse] came over, exactly[.]" Rouse never testified that his wife was the aggressor. Later during his testimony, counsel asked, "[C]an you give us another incident where Betty's attacked Jeanette[?] *Think hard now*."[20] Rouse then testified concerning the incident with the razor. Rouse testified that he relayed to Burnette all the

---

[18] (Footnote omitted.) *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000). Accord *Gordon v. State*, 252 Ga. App. 133, 135 (2) (555 SE2d 793) (2001) (refusing to find ineffective assistance based on defendant's own induced error). See also *In the Interest of S. B.*, 287 Ga. App. 203, 210 (1) (b) (651 SE2d 140) (2007) (in termination of parental rights case, trial counsel not ineffective where she attempted several times to contact the mother, who had moved and disconnected her telephone; mother bore some responsibility for failure to present certain information to court).

[19] See *Tolbert v. State*, 282 Ga. 254, 257 (3) (647 SE2d 555) (2007); *Branan v. State*, 285 Ga. App. 717, 721 (4) (647 SE2d 606) (2007).

[20] (Emphasis supplied.)

threats his wife made against her, including Ms. Rouse's threat to get a gun and shoot both Rouse and Burnette. At the new trial hearing, Rouse testified that if counsel had asked him what he witnessed on the day of the event, he would have said that Ms. Rouse attacked Burnette, who "proceeded to fight her after [Ms. Rouse] struck her and she grabbed her hair." But, as noted above, counsel did ask Rouse at trial to explain what happened that day. The trial court's findings that counsel was not ineffective in his preparation of Rouse as a witness or in his questioning in an attempt to establish a self-defense claim are not clearly erroneous. "[A] claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight."[21]

(f) *Jury charges.*

(i) Burnette claims that she was prejudiced by trial counsel's failure to submit a written request to charge on self-defense. We do not agree. "Where an affirmative defense is raised by the evidence, including a defendant's own statement, the trial court must present that defense to the jury as part of its charge, even absent a request and even absent a reservation of right to later object."[22] Thus, if the defense had been raised by the evidence, the court would have been obliged to charge it, regardless of whether counsel requested it. Moreover, the trial court carefully considered trial counsel's oral request to charge on the defense.

(ii) Burnette asserts that trial counsel was ineffective for failing to request a charge on lesser included offenses. In order to succeed on this claim, Burnette would have to demonstrate that the evidence reasonably raised the possibility that she might be guilty only of a lesser crime.[23] Burnette has failed to do so, and she does not specify which charges her counsel should have requested. Therefore, this claim fails.

(iii) Burnette contends that trial counsel was ineffective for failing to reserve exceptions to the charge.

When a defendant raises an ineffectiveness claim based on counsel's failure to except to certain jury charges or to preserve the right to do so on appeal, the defendant must show that the charges in question were erroneous and that,

---

[21] (Citation and punctuation omitted.) *Stokes v. State*, 281 Ga. 825, 835 (8) (h) (642 SE2d 82) (2007); *Hooks v. State*, 280 Ga. 164, 165 (3) (626 SE2d 114) (2006).

[22] (Citation omitted.) *Jones v. State*, 226 Ga. App. 619, 621 (1) (487 SE2d 371) (1997).

[23] *Chancey v. State*, 258 Ga. App. 319, 321 (4) (a) (574 SE2d 383) (2002); *Head v. State*, 233 Ga. App. 655, 659 (4) (504 SE2d 499) (1998) (whole court).

if proper charges had been given, there is a reasonable probability that the result of the trial would have been different.[24]

Burnette has not shown that the court's charges were erroneous; thus, this claim fails.

(g) *Failure to show prejudice*. Finally, Burnette contends that she need not show how trial counsel's alleged deficiencies specifically prejudiced her trial because, among other things, counsel did not attribute any errors he committed to trial strategies or tactics; he did not understand the law of self-defense; and he should have argued that Burnette's testimony was not required in order to prove self-defense. But "the circumstances under which a court will presume prejudice are extremely limited."[25] Burnette would have to show, at least, a constructive denial of counsel, which occurs when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[26] Those circumstances are not present here. Counsel subjected Ms. Rouse to a rigorous cross-examination, fully exposing her prior attempt to attack Burnette with a box cutter. Counsel put on a defense witness who recounted the victim's prior attacks against the defendant. Counsel urged the court to charge the jury on self-defense, although his request was unsuccessful. And any lack of preparation was due to his client's failure to provide accurate contact information. "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information."[27] In sum, we cannot say that "trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[28] Accordingly, we affirm the trial court's finding that Burnette did not receive ineffective assistance of counsel.

2. Burnette argues that the trial court erred in refusing to charge the jury on the affirmative defense of self-defense. An affirmative defense is one that admits the doing of the act charged

---

[24] (Punctuation and footnote omitted.) *Holden v. State*, 287 Ga. App. 472, 475 (4) (651 SE2d 552) (2007).

[25] (Citation and punctuation omitted.) *Young v. State*, 280 Ga. 65, 69 (11) (623 SE2d 491) (2005).

[26] (Citations and punctuation omitted.) *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004).

[27] (Citations omitted.) *Gordon*, supra.

[28] (Footnote omitted.) *Boyt v. State*, 286 Ga. App. 460, 462 (2) (649 SE2d 589) (2007).

but seeks to justify, excuse, or mitigate it.[29] The defendant must admit the crime before she can raise the defense,[30] and, where the defense is justification, she must present evidence that she was justified in using force.[31] Finally, even if justification is a defendant's sole defense, it is not error to refuse the charge if there is no evidence to support it.[32] Contrary to Burnette's assertion, the evidence at trial did not support a charge on self-defense.

"A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force."[33] Here, the undisputed evidence shows that Ms. Rouse was sitting in her car when Burnette struck her with a pipe, causing serious injury. Burnette left the safety of her home in order to accomplish this act. Thus, even if we consider Burnette's statement to Deputy Watson that she struck Ms. Rouse as an admission of the crime, there was no evidence that she was under attack by Ms. Rouse. Significantly, Rouse never testified that Burnette believed Ms. Rouse had a weapon. The evidence did not support a charge on self-defense.[34]

3. In her final enumeration of error, Burnette contends that the trial court abused its discretion in denying her counsel's motion to reopen the defense case in order to allow Burnette to testify on the issue of self-defense. Counsel made the motion after the charge conference, when the court announced that it would not instruct the jury on self-defense.

> Whether to reopen the evidence is a matter which rests within the sound discretion of the trial court. A trial court's ruling in this regard will not be reversed in the absence of an abuse of discretion. Whether there has been a reversible abuse of discretion requires a consideration of the totality of the circumstances.[35]

We discern no abuse of discretion in the case at bar. "No proffer was made as to [Burnette's] testimony at the trial level; therefore, we are

---

[29] *Code v. State*, 255 Ga. App. 432, 434 (4) (565 SE2d 477) (2002).

[30] Id.

[31] See *Porter v. State*, 272 Ga. 533, 534 (3) (531 SE2d 97) (2000); OCGA § 16-1-3 (1).

[32] See *Porter*, supra.

[33] OCGA § 16-3-21 (a).

[34] See *Porter*, supra.

[35] (Citation and punctuation omitted.) *Peeples v. State*, 234 Ga. App. 454, 458 (5) (507 SE2d 197) (1998).

unable to ascertain how [s]he was harmed by the court's ruling."[36]

*Judgment affirmed. Smith, P. J., concurs. Adams, J., concurs in judgment only.*

## DECIDED MAY 13, 2008.

*Kelli Devaney-Jackson*, for appellant.

*Louie C. Fraser, District Attorney, Cheryl A. Banks, Assistant District Attorney*, for appellee.

---

[36] (Citation omitted.) *Tweedell v. State*, 218 Ga. App. 518, 520 (2) (462 SE2d 181) (1995).