## A10A0064. JONES v. THE STATE.
### (695 SE2d 359)

DOYLE, Judge.

Following a jury trial, Harvey Louis Jones, Sr., was convicted of aggravated assault[1] and possession of a weapon during commission of a crime.[2] Jones appeals, claiming that the trial court erred in excluding evidence of threats made by the victim against Jones and his family, and in failing to charge the jury on justification, defense of self and others, misapprehension of fact, and no duty to retreat. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[3] the evidence shows that the victim left his house to ask Jones, who was driving his loud car up and down the road at 11:30 p.m., to "calm it down a little bit." Jones responded that he was going to "kick [the victim's] ass," turned the car off, and put one leg out the door. The victim pinned the car door up against Jones, trapping Jones in place, and he told his girlfriend to call 911. According to the victim, Jones repeatedly threatened to kill him as they waited for the police to arrive. According to Jones, the victim pulled a knife out and put it to Jones's throat.

Several weeks later, the victim, who was pushing his child's stroller down the street, recognized Jones's car. When the car stopped, Jones exited the passenger's side of the car and yelled, "I

---

[1] OCGA § 16-5-21 (a) (2).

[2] OCGA § 16-11-106 (b).

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

told you I'm going to kill you." Jones unsheathed a six- to eight-inch long knife. While the victim's friend "grabbed the baby," the victim began backing away from Jones, who ran up and began stabbing him in the side. As a result of his injuries, the victim lost his spleen, suffered a collapsed lung, and spent six days in the intensive care unit.

1. Jones claims that the trial court erred in excluding evidence of threats of violence made by the victim to Jones and his family. We disagree.

Jones's sister testified that the victim rented a house from her mother. The State objected to the sister's subsequent testimony that the victim was "upset with me and my mother and he threatened to kill us" as irrelevant, and the trial court sustained the objection. The trial court then asked to hear a proffer of Jones's niece's testimony in order to not "let the same thing happen with this witness." According to the niece, the victim threatened her, Jones's sister, and the mother on several occasions when the victim was behind on his rent, informing them "that we needed to get off his property or he was going to get his gun," and that "I will kill [Jones] because I want to get back at you." The niece admitted, however, that she did not relay this information to Jones. The trial court sustained the State's objection to the niece's testimony.

As a rule, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."[4] Thus, "[t]he victim's previous difficulties are rarely relevant for any purpose in a criminal proceeding. . . . An exception does exist when the defendant claims justification for his actions and offers evidence that the victim was the aggressor."[5]

Jones contends that the evidence of threats of violence by the victim against Jones and his family was relevant to support a defense of self and others. Although Jones contends that the victim's threats were "inferentially communicated," the evidence did not show that the threats were communicated by the sister or niece to Jones. Jones also argues that if the jury had heard all of the evidence, Jones's testimony could have been corroborated and therefore believed by the jury. "Where there is a conflict in the evidence as to who is the aggressor, evidence of threats previously made but uncommunicated to the defendant [is] admissible to corroborate evidence of threats

---

[4] OCGA § 24-2-2.

[5] (Citation omitted.) *Johnson v. State*, 270 Ga. 234, 235 (3) (507 SE2d 737) (1998).

which were in fact communicated."[6] The evidence, however, showed only that Jones was the aggressor in the incident in which the victim was stabbed, and so a foundation was not laid for the admission of the uncommunicated threats.[7] The trial court did not err in sustaining the State's objections.

2. Jones claims that the trial court erred in failing to charge the jury on his sole defense of justification, including principles of defense of self and others, misapprehension of fact, and no duty to retreat. We disagree.

"*When the evidence could support a charge* on the defendant's sole defense, such charge must be given by the trial court whether or not requested by the defendant."[8] "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force. . . ."[9]

Jones testified that the victim "shot me a bird and laughed" while Jones and his wife were on the way to the store, and that "when we come back, he had come down the road, I told my wife to stop and I got out of the car and I stabbed him." When defense counsel asked Jones if the victim did "anything to you before you stabbed him, or how did that go down," Jones responded "No, it was just the incident where he had broke my leg and tried to cut my throat. . . ." Although Jones complained that the victim dug his finger into his eye, he confirmed that this occurred after he had stabbed the victim. In view of Jones's own testimony, when he assaulted the victim he could not have reasonably believed that either he or a third party required defense from the victim's imminent use of unlawful force. Even if, as Jones argues, he had reason to believe that the victim was armed with a knife, the victim, who was on foot pushing a stroller, was not an immediate threat to Jones or his wife as they drove by in their car. "Including reasonable

---

[6] *Hammond v. State*, 233 Ga. App. 613, 615 (1) (504 SE2d 768) (1998).

[7] See *Dixon v. State*, 256 Ga. 658, 660 (2) (352 SE2d 572) (1987) (uncommunicated threat relevant to the victim's state of mind, and the defendant laid proper foundation for admission of the evidence); *Wilson v. State*, 168 Ga. 672, 677 (3) (148 SE 586) (1929) ("[b]efore proof of uncommunicated threats is admissible in defense, there must be evidence tending to show that the deceased was the assailant in the fatal encounter, or did some overt act showing an intention to carry such threats into execution") (punctuation omitted). Although the issue of the admission of uncommunicated threats has generally been considered in the context of prosecutions for homicide, the issue has also arisen in prosecutions for assault. See *Cargill v. State*, 12 Ga. App. 574, 574 (1) (77 SE 832) (1913) (in a trial for assault with intent to murder, victim's uncommunicated threat properly excluded, "[t]here being no evidence that the person shot made any assault upon the person shooting").

[8] (Emphasis supplied.) *Watts v. State*, 259 Ga. App. 531, 532 (3) (578 SE2d 231) (2003).

[9] OCGA § 16-3-21 (a). See also OCGA § 16-3-20.

inferences, there was no evidence whatsoever on which a finding of the justification of self-defense . . . could be based."[10] Accordingly, the trial court did not err in failing to charge the jury on self-defense.

Nor did the trial court err in failing to instruct the jury on the principle of duty to retreat or misapprehension of fact. "The rule in Georgia is that if the person claiming self-defense was not the original aggressor there is no duty to retreat."[11] The evidence shows, however, that Jones was the aggressor, and we disagree with Jones that the State put retreat into issue by asking Jones questions on cross-examination that tended to highlight the fact that Jones approached the victim.[12] Nor, as Jones contends, does the evidence that the victim "was known by [Jones's] family to carry a knife," demonstrate that Jones "was induced by a misapprehension of fact which, if true, would have justified the act or omission."[13] Even if Jones was mistaken about the victim possessing a knife, the misapprehension, if true, would not have justified his actions.[14]

3. Jones filed a new appellate brief on February 25, 2010, incorporating the claims of error from the original brief, filed September 16, 2009, but adding a claim of ineffective assistance of trial counsel. "Attempts in a supplemental brief to expand the issues beyond the scope of the [original] enumeration of errors are improper."[15] Accordingly, we do not consider the issue.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MAY 11, 2010.

*James W. Bradley, Matthew A. Tucker*, for appellant.

---

[10] *Penn v. State*, 224 Ga. App. 616, 618 (481 SE2d 602) (1997). See, e.g., *Porter v. State*, 272 Ga. 533, 535 (3) (531 SE2d 97) (2000) (charge on justification not required when the defendant shot at the retreating victim); *Burnette v. State*, 291 Ga. App. 504, 511 (2) (662 SE2d 272) (2008) (physical precedent only) (charge of justification not warranted because the defendant left the safety of her home to strike the victim with a pipe); *Code v. State*, 255 Ga. App. 432, 434-435 (4) (565 SE2d 477) (2002) (no evidence to support charge because the defendant could not have reasonably believed that use of unlawful force was imminent).

[11] (Punctuation omitted.) *Felder v. State*, 291 Ga. App. 740, 742 (1) (662 SE2d 826) (2008).

[12] See *Ellis v. State*, 245 Ga. App. 807, 808-809 (3) (539 SE2d 184) (2000) (claim of self-defense was not countered by assertion that the defendant could have avoided the confrontation).

[13] OCGA § 16-3-5.

[14] See *Gunter v. State*, 155 Ga. App. 176, 177 (3) (270 SE2d 224) (1980) (charge on mistake of fact not required if it is not authorized by the evidence).

[15] (Punctuation omitted.) *Campbell v. State*, 253 Ga. App. 325, 326 (3) (558 SE2d 857) (2002).

*Tracy G. Lawson, District Attorney, Luana Popescu, Assistant District Attorney*, for appellee.